1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16
17
18

| | |
|---|---|
| JAMES BRADLEY KIRTLEY, | Case No. 1:19-cv-01062-EPG |
| Plaintiff, | **FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF No. 19) |
| Defendant. | |

19      This matter is before the Court on Plaintiff's complaint for judicial review of an

20  unfavorable decision by the Commissioner of the Social Security Administration regarding his

21  application for Disability Insurance Benefits and Supplemental Security Income. The parties have

22  consented to entry of final judgment by the United States Magistrate Judge under the provisions

23  of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 5,

24  6). For the reasons set forth below, the Court reverses in part and remands the case to the ALJ.

25  **I.   Background**

26      Plaintiff filed for disability benefits under Title II and Title XVI of the Social Security Act

27  on January 29, 2013. (AR 257-69.) His application was denied at the initial level on September

28  25, 2013 (AR 170-77) and was denied at the reconsideration level on December 18, 2013 (AR

180-89).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held before ALJ Christine Hilleren on June 10, 2015. Following the hearing, ALJ Hilleren issued a decision finding Plaintiff to be not disabled. (AR 14-37.) ALJ Hilleren found that Plaintiff had "the following severe impairments: peripheral arterial disease (PAD) hypertension, emphysema/chronic obstructive pulmonary disease (COPD), lumbar degenerative disc disease, degenerative changes of the bilateral hips, bilateral sacroiliac arthropathy with cervical and lumbar myofascial pain syndrome, depression, and anxiety. . . ." (AR 19.)

As to Plaintiff's RFC, ALJ Hilleren found as follows:

> I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he could lift and/or carry (including pushing and pulling) ten pounds occasionally and less than ten pounds frequently, stand and/or walk with normal breaks for four hours in an eight-hour day, and sit with normal breaks for six hours in an eight-hour day, with five-minute rest intervals after every thirty minutes of being on his feet. The claimant would be limited to no more than occasional pushing or pulling with the bilateral lower extremities, no climbing of ladders, ropes, or scaffolds, and no more than occasional climbing of ramps/stairs, stooping, balancing, kneeling, crouching, and crawling. He must avoid concentrated exposure to extreme cold, fumes, odors, dust, gases, and poor ventilation. The claimant is capable of performing simple, routine tasks commensurate with an SVP level of two or less, with no more than occasional changes in the work setting and no more than occasional interaction with co-workers, supervisors, and the public.

(AR 22.)

Based on testimony from a vocational expert ("VE"), the ALJ found Plaintiff to be not disabled at step five:

> . . . Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .
>
> . . . . The vocational expert testified that given [Plaintiff's age, education, work experience, and residual functional capacity], the individual would be able to perform the requirements of representative occupations such as [ticket seller, cashier II, and microfilm preparer]. . . .
>
> Based on the testimony of the vocational expert, I conclude that considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(AR 22, 28-29.) The appeals council declined review (AR 1-3) and ALJ Hilleren's decision thus

1  became the final agency decision.

2        On November 18, 2016, Plaintiff filed an action in the U.S. District Court for review of

3  ALJ Hilleren's decision. *See Kirtley v. Commission of Social Security*, 1:16-cv-01753-BAM

4  (E.D. Cal.) ("*Kirtley I*"). During mandatory settlement negotiations in the case, Defendant sought

5  to have Plaintiff agree to a remand for a *de novo* hearing before an ALJ. Plaintiff refused to do so

6  and Plaintiff's counsel sent Defendant's counsel a letter brief stating Plaintiff's position. This

7  letter stated, in relevant part:

8        I have been working on resolving this issue for over four years and I do not wish to
         relitigate it from the start. Therefore, I am not amicable to a remand for a *de novo* hearing.
9        In an effort to preserve scarce Agency resources, it is my hope that you will agree to
         remand this case for a finding on the <u>sole remaining undecided issue</u> of how to weigh the
10       borderline age situation criteria.

11 (ECF No. 19 at 21.)

12       In response to this letter, Defendant's counsel sought and received consent from

13 Defendant for a voluntary remand on the conditions demanded by Plaintiff, and the parties

14 mutually agreed to remand for the sole purpose of having an ALJ make a new determination at

15 step five. Defendant's counsel then drafted and filed a stipulation to remand. That stipulation

16 provides, in relevant part:

17       On remand, the Appeals Council will remand the case to an administrative law judge
         (ALJ) for a decision. The Appeals Council will instruct the ALJ to obtain supplemental
18       vocational expert testimony, based on findings through step four of ALJ's decision, to
         assist in determining what jobs exist, if any, for the claimant given his age, vocational
19       factors, and residual functional capacity.

20 (AR 823-24.) Based on the parties' stipulation, an order was entered remanding the case to the

21 Commission "for further proceedings consistent with the terms of the Stipulation to Remand."

22 (AR 824.)

23       On remand, the case was assigned to ALJ Shiva Bozarth, and a remand hearing was held

24 on February 14, 2019, at which both Plaintiff and a VE testified. (AR 736-75.) Prior to the

25 hearing, Plaintiff objected to the receipt of additional evidence beyond that required for a step-

26 five determination, arguing that the sole purpose of the remand was for a new step-five

27 determination. (AR 1012.) ALJ Bozarth, both in a letter (AR 892-93) and at the hearing (AR 736-

28 40) stated that all issues would be decided *de novo*, and at the hearing stated that the law of the

case doctrine does not apply to social security cases (AR 739).

On May 9, 2019, ALJ Bozarth issued a partially favorable decision, finding Plaintiff disabled as of April 16, 2013. (AR 712-23.) As to Plaintiff's RFC, ALJ Bozarth determined, in relevant part:

> After careful consideration of the entire record, the undersigned finds that prior to April 16, 2013, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant can lift and carry 20 pounds occasionally and frequently 10. He could sit and or walk for at least 6 hours out of an 8-hour day. He should never climb ladders or scaffolds. He should never be exposed to concentrated fumes, dust, gases and other respiratory irritants.
>
> . . . .
>
> After careful consideration of the entire record, the undersigned finds that beginning on April 16, 2013, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant could lift and carry 10 pounds frequently and occasionally, and stand and walk 4 hours out of an 8-hour workday. He can occasionally walk across uneven terrain and climb ramps and stairs, but never climb ladders or scaffolds. He can occasionally balance, kneel and crawl. He should never work at unprotected heights or have concentrated exposure to fumes, dust, gases and other respiratory irritants. He can perform simple repetitive type tasks with frequent contact with supervisors and workers.

(AR 715, 717, 719.)

At step four, ALJ Bozarth determined, based on the findings, that Plaintiff is unable to perform his past relevant work as a tractor-trailer truck driver. (AR 721.)

At step five, ALJ Bozarth determined:

> Prior to April 16, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. . . .
>
> . . . .
>
> . . . . [T]he Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as [cashier, electronics worker, and sewing machine operator].
>
> . . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that, prior to [April 16, 2013], considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Prior to April 16, 2013, a finding of "not disabled" is therefore appropriate. . . .
>
> Beginning on April 16, 2013, considering the claimant's age, education, work experience,

4

1    and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. . . .

2    (AR 721-22.) Thus, ALJ Bozarth determined Plaintiff "was not disabled prior to April 16, 2013,

3    but became disabled on that date . . . ." (AR 722.) The ALJ did not provide an explanation for

4    finding Plaintiff was disabled beginning on April 16, 2013.

5    On August 1, 2019, Plaintiff filed the present action seeking review of the ALJ's

6    determination that he was not disabled prior to April 16, 2013. (ECF No. 1.)

7    On February 13, 2020, after an exchange of confidential letter briefs, Defendant filed a

8    motion to remand, explaining that Defendant's counsel had determined that remand was

9    appropriate because ALJ Bozarth had failed to provide a clear explanation of why April 16, 2013,

10   was determined to be the onset of disability. (ECF No. 13.) Plaintiff opposed remand, arguing,

11   among other things, that Defendant's motion for remand did not address the primary issue on

12   appeal—that ALJ Bozarth violated the law of the case and rule of mandate doctrines—and that

13   the record contains adequate evidence for the Court to issue a decision on the merits. (ECF No.

14   15.) On April 30, 2020, after hearing from the parties, the Court denied the motion for remand.

15   (ECF No. 18.)

16   On May 8, 2020, Plaintiff filed a motion for summary judgment. (ECF No. 19.) The Court

17   held a hearing on September 1, 2020, at which the parties presented argument.

18   **II.     Standard of Review**

19   Congress has provided a limited scope of judicial review of the Commissioner's decision

20   to deny benefits. In reviewing findings of fact with respect to such determinations, this Court

21   must determine whether the decision of the Commissioner is supported by substantial evidence.

22   42 U.S.C. § 405 (g). The denial of social security benefits will be overturned "only if the decision

23   contains legal error or is not supported by substantial evidence." *Ford v. Saul*, 950 F.3d 1141,

24   1154 (9th Cir. 2020). ). "Substantial evidence ... is more than a mere scintilla, and means only

25   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

26   (*Id.* (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks

27   omitted).

28   The decision of whether to apply the law of the case doctrine to a case that is back before

5

1   a court following remand is in the discretion of the remanding court. *Stacy v. Colvin*, 697 F.3d

2   563, 567 (9th Cir. 2012). "Whether an ALJ has obeyed the remand order of an appellate court is a

3   question of law that [is reviewed] de novo." *Id.* at 568.

4   **III.**   **Discussion**

5        **A.**  **The Parties' Arguments**

6          Plaintiff argues that ALJ Bozarth's decision violates both the law of the case doctrine and

7   the rule of mandate doctrine. (ECF No. 19 at 17-22.) He argues that ALJ Hilleren's findings at

8   step one through four are the law of the case; and that, under the law of the case doctrine, ALJ

9   Bozarth was precluded from reexamining steps one through four, including Plaintiff's RFC. (*Id.*)

10  Plaintiff argues that ALJ Bozarth's decision also violates the rule of mandate because the remand

11  order limited ALJ Bozarth to reexamining step five based on the findings through step four in

12  ALJ Hilleren's decision. (*Id.* at 19-22.) Plaintiff also argues that the VE testimony from two

13  separate hearings unanimously confirms that Plaintiff has been limited to sedentary work during

14  the entire period at issue (*id.* at 23-25), and that application of the borderline age rule supports

15  finding Plaintiff disabled as of his date of last insured (*id.* at 25-30). Plaintiff requests that the

16  Court find Plaintiff disabled as of his date last insured in accordance with the borderline age rule

17  and remand with instructions to award benefits. (*Id.* at 31.)

18        Defendant concedes that the ALJ's decision is not supported by substantial evidence

19  because the ALJ did not adequately explain the evidentiary basis for finding April 16, 2013, as

20  the date on which Plaintiff became disabled. Defendant argues that this deficiency requires

21  remand. (ECF No. 22 at 14-15, 20-22.) As to the law of the case and rule of mandate doctrines,

22  Defendant argues that the ALJ's decision fully comports with the mandate on remand, and that

23  ALJ Bozarth was not required, under the law of the case, to adopt the step one through four

24  findings of ALJ Hilleren. (*Id.* at 19-22.) Defendant further argues that the VE testimony does not

25  conclusively establish that Plaintiff is limited to sedentary work as of his date of last insured, and

26  that remand is required for consideration of the borderline age rule. (*Id.* at 22-26.) Finally,

27  Defendant argues that the record does not compel a finding of disability and Plaintiff's request for

28  an award of benefits is without merit. (*Id.* at 26-29.)

1     **B.  Law of the Case Doctrine and Rule of Mandate Doctrine**

2          *1.  Stacy v. Colvin*

3     In *Stacy v. Colvin*, 697 F.3d 563 (9th Cir. 2012), the Ninth Circuit held for the first time

4     that both "the law of the case doctrine and the rule of mandate doctrine apply to social security

5     remands from federal court in the same way they would apply to any other case." 697 F.3d at 566.

6     However, the Ninth Circuit also determined that, in the case before it, neither the law of the case

7     doctrine nor the rule of mandate doctrine had been violated.

8          As to the law of the case doctrine, the Ninth Circuit explained that this "doctrine generally

9     prohibits a court from considering an issue that has already been decided by that same court or a

10    higher court in the same case." *Id.* (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th

11    Cir. 2012)). "The doctrine is concerned primarily with efficiency and should not be applied when

12    the evidence on remand is substantially different, when the controlling law has changed, or when

13    applying the doctrine would be unjust." *Id.*

14         As to the rule of mandate doctrine, the Ninth Circuit explained that this doctrine "is

15    similar to, but broader than, the law of the case doctrine." *Id.* at 567-68 (citing *United States v.*

16    *Cote*, 51 F.3d 178, 181 (9th Cir. 1995). Under the rule of mandate doctrine,

17          any district court that has received the mandate of an appellate court cannot vary
18          or examine that mandate for any purpose other than executing it. The district court
             may, however, decide anything not foreclosed by the mandate. But the district
19          court commits jurisdictional error if it takes actions that contradict the mandate.
             Whether an ALJ has obeyed the remand order of an appellate court is a question
20          of law that we review de novo.

21    *Id.* at 568 (quoting *Hall*, 51 F.3d at 1067). The Ninth Circuit found that, "[g]iven the expansive

22    remand orders in this case, the ALJ did not violate the rule of mandate."[1] *Id.*

23    _____

24          [1] The first remand order at issue in *Stacy* provided:

25          The ALJ will recontact Plaintiff's treating physicians regarding his visual acuity for the period at
             issue, and will further evaluate Plaintiff's subjective complaints. The ALJ will obtain additional
             evidence from medical and vocational experts, as needed. The ALJ will further evaluate and
26          document Plaintiff's work activity after the alleged onset date. The ALJ will take any other actions
             necessary to develop the record and issue a new decision. Plaintiff will be afforded the opportunity
27          to submit additional evidence and argument.

28    *Stacy*, 697 F.3d at 566.

          The second remand order instructed the ALJ to "formulate a correct RFC, further evaluate step

                                             7

2. *Application of Stacy to the Present Case*

In the present case, for the reasons discussed below, the Court finds that ALJ Bozarth violated both the rule of mandate doctrine and the law of the case doctrine.

a.   Rule of Mandate Doctrine

Under the rule of mandate doctrine, the ALJ "cannot vary or examine" the mandate on remand "for any purpose other than executing it," *Stacy*, 825 F.3d at 568, but may decide any issue that is not expressly or impliedly disposed of on appeal, *see id.*; *Firth v. United States*, 554 F.2d 990, 993-94 (9th Cir. 1977) ("[A] mandate is controlling as to all matters within its compass, while leaving any issue not expressly or impliedly disposed of on appeal available for consideration by the trial court on remand.").

Here, the remand order states that the ALJ is to issue a new decision and is "to obtain supplemental vocational expert testimony, based on findings through step four of ALJ's decision, to determine what jobs exist, if any, for the claimant given his age, vocational factors, and residual functional capacity." (AR 823-24.) The remand order thus allows supplemental evidence of VE testimony, which is testimony that comes in only at step five. *See* 20 C.F.R. § 416.960(c)(2). The remand order does not provide for the ALJ to obtain any other supplemental evidence beyond that from a VE.

The confidential negotiations between Plaintiff and Defendant regarding the remand is consistent with and supports this interpretation of the remand order. It is undisputed that Defendant sought to have Plaintiff agree to a remand for a *de novo* hearing, and that Plaintiff refused to do so. It is also undisputed that Plaintiff's counsel sent Defendant's counsel a letter brief stating Plaintiff's position:

> I have been working on resolving this issue for over four years and I do not wish to relitigate it from the start. Therefore, I am not amicable to a remand for a *de novo* hearing. In an effort to preserve scarce Agency resources, it is my hope that you will agree to remand this case for a finding on the <u>sole remaining undecided issue</u> of how to weigh the borderline age situation criteria.

(ECF No. 19 at 21.)

Plaintiff contends, and Defendant does not deny, that in response to this letter brief,

---

five of the disability analysis, and otherwise comply with [the first] remand order." *Id*. at 566-67.

Defendant's counsel offered a voluntary remand, noting that Plaintiff refused to agree to a remand for a *de novo* hearing; that after Defendant's counsel received consent from Defendant, the parties mutually agreed to remand for the sole purpose of having an ALJ make a new determination at step five; and that, in response, Defendant's counsel drafted and filed the stipulation on which the remand is based and which is integrated into the remand order.

Defendant argues that the language in the remand order stating that the VE testimony is to be "based on findings through step four of ALJ's decision," is a reference to a decision to be made by an ALJ on remand, and that nothing in the remand order "requires the ALJ to accept the previous ALJ's RFC assessment or precludes the ALJ on remand from taking in new evidence or making a new finding at step one through four." (ECF No. 22 at 22.) Plaintiff argues that the language, "based on findings through step four of ALJ's decision," is a reference to the findings through step four in ALJ Hilleren's decision.

The Court agrees with Plaintiff's interpretation of this language. Specifically, the Court finds that the language, "based on findings through step four of ALJ's decision," when viewed in context with the language allowing supplemental VE testimony but not referencing any other additional supplemental evidence, demonstrates that the "ALJ decision" referenced in the mandate is a reference to the ALJ decision on appeal, and the only ALJ decision that had been issued in the case at that point in time—the decision of ALJ Hilleren.

Moreover, the only issue on appeal was the failure of ALJ Hilleren to include all of the RFC limitations in the hypothetical posed to the VE, which is a step five issue, further demonstrating that the remand order language, "findings through step four of ALJ decision," was a reference to ALJ Hilleren's decision.

Finally, Defendant argues that interpreting the remand order as limiting the remand to step five proceedings is contrary to the holding in *Stacy*. (ECF No. 22 at 20-21.) The Court disagrees.

The remand order in *Stacy* was very broad, allowing the ALJ to "recontact Plaintiff's treating physicians," to "further evaluate Plaintiff's subjective complaints," to "obtain additional evidence from medical and vocational experts as needed," to "evaluate and document Plaintiff's work activity after the alleged onset date," and "take any other actions necessary to develop the

record and issue a new decision," and to "formulate a correct RFC, further evaluate step five of the disability analysis. . . ." 825 F.3d at 566. The Ninth Circuit held that this "expansive remand order . . . did not preclude the ALJ from taking new evidence relevant to the step four determination. While that order focused on step 5 of the process, it also held that the ALJ used an incorrect RFC, a determination that is made before reaching step 4 and which significantly affects the analysis at steps 4 and 5." *Id.* at 568.

In contrast to *Stacy,* the remand order at issue here is not broad or expansive but is, instead, very limited, stating that the ALJ is "to obtain supplemental vocational expert testimony, based on findings through step four of ALJ's decision, to determine what jobs exist, if any, for the claimant given his age, vocational factors, and residual functional capacity." This mandate order does not in any way indicate that reexamination of steps one through four was allowed. To the contrary, the mandate order only provided for additional evidence from a VE, which is, again, a step five issue. By reexamining prior steps, including making a new RFC determination, ALJ Bozarth went beyond what was allowed under the remand order and thus violated the rule of mandate doctrine.

In sum, the Court finds that the remand order limited reexamination to step five and allowed the ALJ to obtain "supplemental VE testimony, based on findings through step four of [ALJ Hilleren's] decision," including ALJ Hilleren's determination of an RFC. Accordingly, ALJ Bozarth's acts of obtaining supplemental evidence that was not related to step five, and reexamination of steps prior to step five, including whether Plaintiff had a severe impairment and Plaintiff's RFC, violated the rule of mandate doctrine.

b. Law of the Case Doctrine

As noted above, under the law of the case doctrine, an ALJ is generally prohibited from "considering an issue that has already been decided by the same court or a higher court in the same case," but the doctrine "should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 697 F.3d at 567. The determination of whether to apply the law of the case doctrine is within the discretion of the remanding court. *See id.*

10

1    Here, ALJ Hilleren's determination on steps one through four were not addressed by the

2    magistrate judge in *Kirtley I*. To the contrary, as discussed above, the remand order was for a step

3    five determination only. Accordingly, the determination by ALJ Hilleren on steps one through

4    four remained in place and became the law of the case. *See Stacy*, 697 F.3d at 567 ("[A]lthough

5    these findings were never affirmed by the district court on review, this is typically the type of

6    determination that should not be reconsidered under the law of the case doctrine.").

7    Further, the issue that Plaintiff was appealing in *Kirtley I* was the failure of the ALJ to

8    include the full RFC in the hypothetical posed to the VE, and specifically the failure to include

9    the limitation of "no more than occasional interaction with co-workers, supervisors, and the

10   public." (*See* ECF No. 19 at 21.)  This is a step five issue and does not impact ALJ Hilleren's

11   findings on steps one through four, further supporting the conclusion that those findings were the

12   law of the case. *See Stacy*, 697 F.3d at 567.

13   Finally, as discussed above, to the extent that ALJ Bozarth obtained evidence beyond  VE

14   testimony on remand, that additional evidence violates the rule of mandate and cannot be used to

15   justify reopening and reexamining steps prior to step five. *Cf. Stacy*, 697 F.3d at 567, 568 (where

16   remand order was expansive, and did not preclude the ALJ on remand from obtaining additional

17   evidence, including on the RFC, ALJ could use that additional evidence to reexamine findings

18   made by the previous ALJ).

19   In sum, the Court finds application of the law of the case doctrine to be appropriate here

20   and further finds that ALJ Hilleren's determinations at steps one through four, including ALJ

21   Hilleren's RFC determination, are the law of the case.

22   **C. <u>Appropriate Remedy</u>**

23   *1. Whether the VE testimony establishes that Plaintiff is limited to sedentary work.*

24   Plaintiff argues that the VE testimony from both the 2015 hearing before ALJ Hilleren

25   and the 2019 hearing before ALJ Bozarth confirm that Plaintiff is limited to sedentary work

26   during the entire period at issue. Defendant disagrees and argues that the VE testimony does not

27   conclusively establish that Plaintiff is limited to sedentary work since the date last insured.

28   Because, as discussed above, the RFC as determined by ALJ Hilleren is the law of the

case, the Court uses that RFC in examining the parties' arguments. That RFC is as follows:

> I find that the claimant has the residual functional capacity to perform a range of
> light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he
> could lift and/or carry (including pushing and pulling) ten pounds occasionally
> and less than ten pounds frequently, stand and/or walk with normal breaks for
> four hours in an eight-hour day, and sit with normal breaks for six hours in an
> eight-hour day, with five-minute rest intervals after every thirty minutes of being
> on his feet. The claimant would be limited to no more than occasional pushing or
> pulling with the bilateral lower extremities, no climbing of ladders, ropes, or
> scaffolds, and no more than occasional climbing of ramps/stairs, stooping,
> balancing, kneeling, crouching, and crawling. He must avoid concentrated
> exposure to extreme cold, fumes, odors, dust, gases, and poor ventilation. The
> claimant is capable of performing simple, routine tasks commensurate with an
> SVP level of two or less, with no more than occasional changes in the work
> setting and no more than occasional interaction with co-workers, supervisors, and
> the public.

(AR 22.)

At the initial hearing, in June 2015, ALJ Hilleren asked the VE about a hypothetical worker who had the ability to lift, carry, push or pull 10 pounds occasionally and less than 10 pounds frequently; the ability to stand and/or walk no more than four hours per workday; no ability to climb ladders, ropes or scaffolds; the ability to engage in postural activities on an occasional basis; no concentrated exposure to extreme cold, fumes, odors, dust gasses and poor ventilation; job duties composed of simple routine tasks; occasional pushing or pulling with the bilateral lower extremities; and the ability to sit no more than six hours per day. (AR 79, 81.) The VE testified that there were two light exertion occupations available to someone with those limitations, the occupations of ticket seller and cashier. (AR 82-83.) The VE testified that such a worker would otherwise be limited to unskilled sedentary work, and that such a worker could perform the sedentary exertion occupation of microfilming, document preparer. (AR 83.)

A comparison of the RFC found by ALJ Hilleren and the hypothetical she posed to the VE demonstrates that they are different in a significant way—the hypothetical fails to include the non-exertional RFC limitation of "no more than occasional interaction with co-workers, supervisors, and the public." This is the issue raised by Plaintiff in the first appeal, *Kirtley I*.

After the voluntary remand in *Kirtley I*, Defendant acknowledged ALJ Hilleren's

1   error in failing to include this non-exertional RFC limitation, stating:

2          The decision's assessed residual functional capacity (RFC) contains a
3      limitation to "no more than occasional interaction with coworkers, supervisors,
       and the public" (Dec., p.6). At the hearing, however, none of the hypothetical
4      questions presented to the vocational expert (VE) by the Administrative Law
       Judge (ALJ) included this limitation. In response to the hypotheticals that were
5      presented, the VE provided two representative light jobs, ticket seller and cashier,
       and a representative sedentary job, microfilm preparer. The ALJ relied on these
6      occupations at step 5 to support the ultimate determination that the claimant was
       'not disabled'.
7
           These three jobs do not support the finding that the claimant was capable
8      of making an adjustment to other work. According to the Dictionary of
       Occupational Titles (DOT), the job of ticket seller involves: speaking clearly and
9      distinctly, talking constantly, dealing with people, talking with or signaling
       people, and giving assignments and/or directions. The job of cashier also involves
10     these social activities, except a cashier needs to talk only frequently instead of
       constantly. These descriptions in the DOT indicate these jobs may require more
11     than occasional social interaction. Accordingly, the testimony of a VE who did
       not contemplate the RFC's social limits cannot support the decision's step 5
12     finding that the claimant could perform these jobs. With regarding to the third job,
       microfilm preparer, the DOT defines this as a sedentary occupation. An RFC for
13     light exertion indicates the claimant also has the ability to perform sedentary
       work. An ability to perform a sedentary job, however, cannot support the
14     decision's step 5 analysis of the Medical-Vocational Rule for light exertion (Rule
       202.18) (Dec., p.12).
15

16   (AR 830.)

17          Because the only two light duty jobs identified by the VE are excluded once the limitation

18   of "no more than occasional interaction with co-workers, supervisors, and the public," is

19   considered, the VE's testimony during the hearing before ALJ Hilleren establishes that Plaintiff

20   was limited to sedentary work.

21          Further, at the February 2019 hearing before ALJ Bozarth, the VE was asked about the

22   occupational base for an individual with the RFC as found by ALJ Hilleren. (AR 770.) The VE

23   testified that such an individual would be limited to sedentary exertion occupations. (*Id.*)

24          Thus, as Plaintiff argues, the VE testimony at both the 2015 hearing before ALJ Hilleren

25   and the 2019 hearing before ALJ Bozarth establish that, based on ALJ Hilleren's RFC

26   determination, Plaintiff is limited to sedentary exertion occupations.

27          Defendant argues that, regardless of the VE testimony, the evidence does not establish that

28   Plaintiff was limited to sedentary work for the duration of the alleged period of disability, and that

1    the ALJ, not the VE, determines whether a claimant's limitations affect his ability to work. (ECF

2    No. 22 at 23-24.) In support of this argument, Defendant cites to various portions of the AR,

3    including medical testimony regarding Plaintiff's physical limitations, and challenges the use of

4    the RFC as determined by ALJ Hilleren. (*Id.*)

5           As discussed above, ALJ Hilleren's RFC determination is the law of the case and is thus

6    the proper RFC to be used in determining whether claimant would be limited to sedentary or light

7    exertion work. Defendant's reliance on evidence in the record that is inconsistent with ALJ

8    Hilleren's RFC is misplaced and is rejected.

9           In sum, the RFC as found by ALJ Hilleren is the law of the case and establishes

10   that Plaintiff, based on this RFC, was limited to sedentary work since his alleged onset

11   date of January 28, 2011.

12                *2. Whether the record establishes the Plaintiff was disabled as of the date he
13                attained age 50.*

14          Plaintiff argues that application of grid rule 201.10 mandates a finding that he is disabled

15   since he attained the age of 50. (ECF No. 19 at 25-26.) Defendant disagrees and argues that

16   Plaintiff has not established that he was limited to sedentary work at all relevant times and that

17   Plaintiff's reliance on rule 201.10 is therefore misplaced. (ECF No. 22 at 24.)

18          The Court has already rejected Defendant's contention regarding Plaintiff's exertional

19   limitations, and has found, based on ALJ Hilleren's determination of Plaintiff's RFC, which,

20   again, is the law of the case, along with VE testimony at both the 2015 and 2019 hearings, that

21   Plaintiff was limited to sedentary work to the date last insured.

22          As to application of the grids, the Medical-Vocational Guidelines, or "grids," provide:

23          Individuals approaching advanced age (age 50-54) may be significantly limited in
            vocational adaptability if they are restricted to sedentary work. When such
24          individuals have no past work experience or can no longer perform vocationally
            relevant past work and have no transferable skills, a finding of disabled ordinarily
25          obtains. . . . For this age group, even a high school education or more (ordinarily
            completed in the remote past) would have little impact for effecting a vocational
26          adjustment unless relevant work experience reflects use of such education.

27   20 C.F.R. Pt. 404, Subpt. P., App. 2, § 200.00(g).

28          Under grid rule 201.10, a claimant who is limited to sedentary work as a result of severe

14

medically determinable impairments and who is closely approaching advanced age (50-54), with limited or less education, and no transferable work skills, would be found disabled. *Id.* at § 201.10.

Plaintiff has established that he was limited to sedentary work since the date of last insured. It is undisputed that plaintiff has limited or less education and no transferable skills. Thus, under grid rule 201.10, Plaintiff is deemed to be disabled as of the date he attained age 50. *See id.*; *see also Cooper v. Sullivan*, 880 F.2d 1152, 1157–58 (9th Cir. 1989) (An ALJ may "not disregard the grids' conclusion of disability. . . .").

Remand on this issue is not needed because the record has been fully developed on this issue and further administrative proceedings would serve no useful purpose. The Court will therefore remand with instructions to award benefits to the date Plaintiff attained age 50.

### 3.   *Whether application of the borderline age rule supports finding Plaintiff disabled as of the date last insured.*

Plaintiff argues that the borderline age rule establishes that he was disabled as of the date last insured, which is approximately four months prior to the date he attained the age of 50. (ECF No. 19 at 26-30.) He requests that the Court remand the case for an award of benefits with instructions to find Plaintiff disabled as of his date last insured in accordance with the borderline age rule.[2]

Defendant argues that remand is needed for consideration of the borderline age rule, that

---

[2] The "borderline age rule" provides, in relevant part:

> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.
>
> . . . .
>
> (d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

20 C.F.R. 404-1563(b), (d).

1   the record does not compel a finding of disability, and that Plaintiff's request for a judicial award

2   of benefits is without merit. (ECF No. 22 at 24-29.) Defendant, in support of this argument, again

3   contends that Plaintiff has not established that he was limited to sedentary work. Again, the Court

4   has already rejected this contention.

5          As to Plaintiff's request that the Court determine whether the borderline age rule should

6   be applied, the Court notes that Plaintiff wants an award of benefits because he has been

7   attempting to litigate this issue for a long time and the ALJ has already failed to address this issue

8   on remand. However, the initial remand was not specifically for the borderline age issue. Thus,

9   the ALJ has not yet directly refused to consider this issue on remand, and the Court finds that a

10  remand for consideration of application of the borderline age rule is thus warranted. *See*

11  *Longworth v. Colvin,* 2015 WL 1263319, at *5 (W.D. Wash. Mar. 19, 2015) (remanding for

12  further proceedings where ALJ did not consider application of borderline age rule and the court

13  was "unable to determine whether [the claimant] would be disabled under the advanced age

14  metrics and there is no authority for the proposition that the Court should conduct such an

15  evaluation"); *cf. Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990) (invoking the court's

16  discretion to order payment of benefits instead of remanding the case for further development of

17  the record given the "exceptional facts of the case" and that it was "highly doubtful that the

18  secretary would be able to sustain his burden ... [on] remand").

19  **IV.    Conclusion**

20         For the foregoing reasons, the Court remands this case to the ALJ as follows:

21         1.  Th case is remanded with instructions to award benefits to the date Plaintiff attained

22             age 50; and

23         2.  As to the approximately four months between the date last insured and the date on

24             which Plaintiff attained the age of 50, the ALJ is directed to consider whether the

25             borderline age rule should be applied to Plaintiff and, if so, whether application of that

26             rule would result in a finding that Plaintiff was disabled during the period between the

27             date he was last insured and the date he attained the age of 50.

28  \\\

1          Accordingly, the decision of the Commissioner of Social Security Administration is

2     REVERSED in part and REMANDED for further proceedings consistent with this decision.

3

4     IT IS SO ORDERED.

5          Dated:   **October 2, 2020**              /s/ Erica P. Grosjean

6                                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28